**F I L E D**
CLERK, U.S. DISTRICT COURT

4/18/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: ___VAM___ DEPUTY

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
CAROLYN S. SMALL (Cal. Bar No. 304938)
Assistant United States Attorneys
Major Frauds Section
      1100 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-1259/2041
      Facsimile: (213) 894-0141
      E-mail:    alexander.schwab@usdoj.gov
               carolyn.small@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR  2:22-cr-00147-SVW |
|      Plaintiff, | PLEA AGREEMENT FOR DEFENDANT NICHOLAS GARDNER |
|           v. | |
| NICHOLAS GARDNER, | |
|      Defendant. | |

    1.   This constitutes the plea agreement between defendant NICHOLAS GARDNER ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the investigation of alleged illegal kickbacks being provided by suppliers to executives of HCT Packaging, Inc. and the failure to file Reports of Foreign Bank and Financial Accounts.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and agree to the filing of a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form; and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count two of the information, which charges defendant with Willful Failure to File Report of Foreign Bank and Financial Accounts, in violation of 31 U.S.C. §§ 5314, 5322(a), (b), 31 C.F.R. §§ 1010.350, 1010.306, 1010.840.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Make restitution as ordered by the Court.

i.   Prior to sentencing, disclaim and forfeit all interest in the approximately $2,399,059.35 in assets attached in HCT Group

2

Holdings Limited et al. v. Nicholas Gardner et al., Case No. BC 645615, in Los Angeles Superior Court, and to facilitate the sale and/or liquidation of these assets, except to the extent prohibited by any lawfully instituted lien or court order, with all interest and proceeds to be transferred to HCT Group Holdings, Limited.  Defendant also agrees to disclaim, forfeit, and transfer by quitclaim deed to HCT all interest in the real property located at 980 N. Bundy Drive, Los Angeles, California 90049.  Further, defendant agrees to transfer to HCT Group Holdings, Limited, by wire transfer the funds in the HSBC Hong Kong accounts ending in -833 and -838 owned or controlled by defendant, including but not limited to the $609,915.74 frozen by the High Court of the Hong Kong Special Administrative Region (HCMP 75 / 2017), except to the extent prohibited by any lawfully instituted lien or court order.

j.   Not contest the right of HCT Group Holdings, Limited, its affiliated entities or individuals, or KDC/ONE, to provide victim impact statement(s) in writing or in open court in connection with defendant's sentencing proceedings.[1]

k.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

---

[1] In agreeing to paragraphs 2(i) and 2(j) of this agreement, defendant does not admit any liability to HCT Group Holdings, Limited, its affiliated entities or individuals, or KDC/ONE.

l.     Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

m.     Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

n.     Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

o.     Agree that court appearances, including his initial appearance and change of plea hearing, but not his sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by General Order 20-043 or another order, rule, or statute.  Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the right to be physically present at these hearings.  Defendant understands that right.  Defendant prefers that his change of plea hearing proceed in person, but after consulting with counsel, voluntarily agrees to waive his right to an in-person hearing and proceed remotely, if that is the Court's preference.  Defense counsel also joins in this

consent, agreement, and waiver.  Specifically, this agreement
includes, but is not limited to, the following:

        i.  Defendant consents under Federal Rules of
Criminal Procedure 5(f) and 10(c) and Section 15002(b) of the CARES
Act to proceed with his initial appearance and arraignment by VTC or
telephone, if VTC is not reasonably available.

        ii.  Defendant consents under Section 15002(b) of the
CARES Act to proceed with his waiver of indictment, under Federal
Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not
reasonably available.

        iii. Defendant consents under Section 15002(b) of the
CARES Act to proceed with his change of plea hearing by VTC or
telephone, if VTC is not reasonably available.

        p.  Defendant understands that the government obtained
additional material in this investigation that defendant has not been
shown.  In exchange for the government's obligations under this
agreement, defendant gives up any right he may have had to review the
additional material, regardless of whether it is arguably exculpatory
or inculpatory.  The government agrees not to use at sentencing any
of the withheld material without providing it to defendant.  The
government will nevertheless provide to defendant any information
material to the determination of guilt or punishment within the
meaning of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), before the time of
sentencing.

    3.  Defendant admits that defendant realized $121,246 of
unreported income in 2011, $346,460 of unreported income in 2012,
$883,074 of unreported income in 2013, $1,630,946 of unreported
income in 2014, and $2,281,595 in unreported income in 2015.

Defendant therefore owes $1,757,811 to the Internal Revenue Service, which comprises the tax liabilities less payments made by defendant to date.  Defendant agrees that:

    a.   Defendant will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns; will pay to the Internal Revenue Service all additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the returns; and will promptly pay to the Internal Revenue Service all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be owing as a result of any computational error(s).  Payments may be made to IRS-RACS, ATTN: Mail Stop 6261, Restitution, 333 W. Pershing Ave., Kansas City, MO 64108.

    b.   Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to any amended returns defendant has filed or will file.

    c.   Defendant will not file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

    d.   Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

<u>THE USAO'S OBLIGATIONS</u>

4.   The USAO agrees to:

    a.   Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss count one of the information as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any facts and evidence supporting any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to USSG § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.    Not further criminally prosecute defendant for violations of 18 U.S.C. §§ 1341, 1343, 1346, 1956, and 1957, or 26 U.S.C. §§ 7201 or 7206 arising out of defendant's alleged conduct described in the proposed information attached as Exhibit A. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

NATURE OF THE OFFENSE

5.   Defendant understands that for defendant to be guilty of the crime charged in count two, that is, Willful Failure to File Report of Foreign Bank and Financial Accounts, in violation of 31 U.S.C. §§ 5314, 5322(a), (b), 31 C.F.R. §§ 1010.350, 1010.306, 1010.840, the following must be true: (1) defendant had a financial interest in, or signature or other authority over, a financial account in a foreign country with an aggregate value of more than $10,000 at any time during the charged calendar year; (2) defendant failed to file, with the Department of Treasury, a Report of Foreign Bank and Financial Accounts ("FBAR") for the charged calendar year, on or before the date such report was due that year, disclosing that account; and (3) in failing to file an FBAR for that calendar year disclosing that account, defendant acted willfully.  A defendant acts willfully when defendant knows that federal law imposed a duty on defendant to file an FBAR and defendant intentionally and voluntarily violated that duty.

PENALTIES AND RESTITUTION

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 31 U.S.C. §§ 5314, 5322(a), (b), 31 C.F.R. §§ 1010.350, 1010.306, 1010.840, is: five years of imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.

7.   Defendant understands and agrees that the Court may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States

based upon the count of conviction and any relevant conduct, including the alleged honest services wire fraud scheme described in the proposed information attached as Exhibit A.

8.   Defendant agrees to make full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court has the authority and may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court has the authority and may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in USSG § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those counts, including any losses suffered by victim(s), including HCT Group Holdings, Limited; its affiliated entities or individuals; or KDC/ONE, from the conspiracy to commit honest services wire fraud alleged in count one of the information.

9.   Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

10.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

12.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant

fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

13.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Between 2003 and January 2017, defendant worked as the Vice President of Sales and later Executive Vice President for HCT Packaging, Inc. ("HCT"), a New Jersey corporation headquartered in Santa Monica, California, where defendant was based during all relevant times.  HCT is a subsidiary of HCT Group Holdings Ltd. ("HCT Group"), a Hong Kong corporation that also owns subsidiaries in Asia and the United Kingdom.  HCT's business involved overseeing the design, engineering, manufacturing, and logistics of cosmetics components, such as compacts and blush applicators, for clients in the cosmetics industry.  Defendant's responsibilities included, among other things, interfacing with HCT customers and suppliers in the United States and in Asia and directing orders from HCT customers to particular HCT suppliers.

Beginning in 2010, and continuing through at least 2016, defendant began to accept supplemental income from HCT suppliers (the "supplemental income"), including Fortune Packaging, a manufacturer located in China.  In an effort to conceal the supplemental income from officials in the United States, defendant opened a foreign bank account in his name with HSBC in Hong Kong (the "Hong Kong HSBC account") by visiting an HSBC branch in Hong Kong with his project manager and HCT subordinate, Derrick Chang.  Defendant then caused the HCT suppliers to deposit the supplemental income into the Hong Kong HSBC account so as to insulate the supplemental income from detection by U.S. officials.

During calendar year 2015, defendant had a financial interest in, and signature and other authority over, the Hong Kong HSBC account, which held an aggregate value of more than $10,000 during 2015.  For example, on December 30, 2015, the Hong Kong HSBC account held a balance of approximately $1,201,743.  As defendant then knew, he was required to file, with the Department of Treasury, a Report of Foreign Bank and Financial Accounts ("FBAR") for the 2015 calendar year relating to the Hong Kong HSBC account, yet he willfully failed to do so in an attempt to avoid disclosure of the supplemental income.  He instead filed an FBAR for the 2015 calendar year on June 17, 2016, in which he willfully failed to report the Hong Kong HSBC account.

In a further attempt to avoid disclosure of the supplemental income, defendant instructed a family member in the United Kingdom to structure recurring ATM cash withdrawals out of his HSBC accounts. Defendant also created a Hong Kong business entity called "Cognisant Limited," which he used to create invoices addressed to Fortune

12

Packaging for services purportedly rendered in exchange for the supplemental income.

Between 2011 and 2015, defendant received supplemental income into the Hong Kong HSBC account of approximately $5,263,321, which he failed to report to the United States Internal Revenue Service, as he knew he was required to do.

SENTENCING FACTORS

14. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

15. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| Base Offense Level | 24 | USSG § 2S1.3(a)(2) |
|---|---|---|
| | | USSG § 2B1.1(b)(1)(J) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. By way of example, but not limitation, the government reserves the right to argue -- and defendant reserves the right to contest -- that additional two-level

enhancements under USSG §§ 2S1.3(b)(1)(A) and 2S1.3(b)(2) apply because the unreported funds in defendant's foreign account(s) were derived from criminal activity and arose from a pattern of illegal activity involving more than $100,000 in a 12-month period, namely, the honest services wire fraud scheme described in count one of the proposed information attached as Exhibit A.

16. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18. Defendant understands that by pleading guilty, defendant gives up the following trial rights with respect to count two:

     a.    The right to persist in a plea of not guilty.

     b.    The right to a speedy and public trial by jury.

     c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

     d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

     e.    The right to confront and cross-examine witnesses against defendant.

1   f. The right to testify and to present evidence in

2 opposition to the charges, including the right to compel the

3 attendance of witnesses to testify.

4   g. The right not to be compelled to testify, and, if

5 defendant chose not to testify or present evidence, to have that

6 choice not be used against defendant.

7   h. Any and all rights to pursue any affirmative defenses,

8 Fourth Amendment or Fifth Amendment claims, and other pretrial

9 motions that have been filed or could be filed.

10      WAIVER OF STATUTE OF LIMITATIONS

11  19. Having been fully advised by defendant's attorney regarding

12 application of the statute of limitations to the offense to which

13 defendant is pleading guilty, defendant hereby knowingly,

14 voluntarily, and intelligently waives, relinquishes, and gives up:

15 (a) any right that defendant might have not to be prosecuted for the

16 offense to which defendant is pleading guilty because of the

17 expiration of the statute of limitations for that offense prior to

18 the filing of the information alleging that offense; and (b) any

19 defense, claim, or argument defendant could raise or assert that

20 prosecution of the offense to which defendant is pleading guilty is

21 barred by the expiration of the applicable statute of limitations,

22 pre-indictment delay, or any speedy trial violation.

23      WAIVER OF APPEAL OF CONVICTION

24  20. Defendant understands that, with the exception of an appeal

25 based on a claim that defendant's guilty plea was involuntary, by

26 pleading guilty defendant is waiving and giving up any right to

27 appeal defendant's conviction on the offense to which defendant is

28 pleading guilty.  Defendant understands that this waiver includes,

but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

21.  Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, provided it is no more than 60 months; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

22.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statute of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is

16

unconstitutional, that newly discovered evidence purportedly supports defendant's innocence, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

23. The USAO agrees that, provided all portions of the sentence are within the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

24. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then: (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then: (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

25.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

26.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

27.  Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea; and (b) the USAO will be relieved of all its obligations under this agreement.

28.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed-to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

29.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

to the United States Probation and Pretrial Services Office and the Court; (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence; and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

32.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

20

1  promise, understanding, or agreement may be entered into unless in a

2  writing signed by all parties or on the record in court.

3             PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4       33.   The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10 TRACY L. WILKISON
   United States Attorney

11

12                                              4/15/2022

   ALEXANDER B. SCHWAB                          Date
13 CAROLYN S. SMALL
   Assistant United States Attorneys
14

15

   NICHOLAS GARDNER                             Date
16 Defendant

17

                                                4/14/22
18 DAVID C. SCHEPER                             Date
   Attorney for Defendant
19 NICHOLAS GARDNER

20

21

22

23

24

25

26

27

28

                              21

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          Date ___4/14/22___

NICHOLAS GARDNER
Defendant

22

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am NICHOLAS GARDNER's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____     4/14/22
DAVID C. SCHEPER                     Date
Attorney for Defendant
NICHOLAS GARDNER

23

1

2

3

4                                **EXHIBIT A**

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11           Plaintiff,                 I N F O R M A T I O N

12           v.                         [18 U.S.C. § 1349: Conspiracy to
                                        Commit Wire Fraud Involving
13   NICHOLAS GARDNER,                  Deprivation of Honest Services; 31
                                        U.S.C. §§ 5314, 5322(a), (b), 31
14           Defendant.                 C.F.R. §§ 1010.350, 1010.306,
                                        1010.840: Willful Failure to File
15                                      Report of Foreign Bank and
                                        Financial Accounts; 18 U.S.C.
16                                      § 981(a)(1)(C), 28 U.S.C.
                                        § 2461(c): Criminal Forfeiture]
17

18        The United States Attorney charges:

19                              COUNT ONE

20                         [18 U.S.C. § 1349]

21   A.   INTRODUCTORY ALLEGATIONS

22        At times relevant to this Information:

23        1.   Defendant NICHOLAS GARDNER and co-conspirator Derrick

24   Yishin Chang were residents of Los Angeles County.

25        2.   HCT Packaging, Inc. ("HCT"), was a New Jersey corporation

26   headquartered in Santa Monica, California.  HCT was a subsidiary of

27   HCT Group Holdings Ltd. ("HCT Group"), a Hong Kong corporation that

28   had subsidiaries in Asia and the United Kingdom.  HCT's business

involved overseeing the design, engineering, manufacturing, and logistics of cosmetics components, such as compacts and blush applicators, for customers in the cosmetics industry.

3.   Defendant GARDNER was employed by HCT from in or about 2003 until in or about January 2017.  In or about April 2009, defendant GARDNER was promoted to Executive Vice President of Sales for HCT in which capacity he reported directly to the Chief Executive Officer and owed a fiduciary duty to HCT.

4.   Co-conspirator Chang was employed by HCT from in or around 2007 until in or around January 2017.  For the majority of co-conspirator Chang's tenure with HCT, he worked as a project manager reporting directly to defendant GARDNER.  At the time co-conspirator Chang's employment with HCT ended, co-conspirator Chang held the position of Senior Director of Development and Manufacturing.

5.   Defendant GARDNER and co-conspirator Chang's job responsibilities included selecting manufacturers to supply HCT product components.  HCT policy prohibited employees from accepting "money or benefits of any kind for any advice or services [they] may provide to a supplier in connection with its business with the corporation."

6.   HCT oversaw the manufacturing of cosmetics components requested by its customers.  HCT submitted design specifications for a requested component to prospective manufacturers together with a request for a price quote.  In selecting a manufacturer, HCT relied on factors such as manufacturing capacity, capability, and HCT's access to the manufacturer, in addition to the quoted price.  Because of these considerations, HCT preferred manufacturers that were owned or controlled by HCT Group.  HCT required employees involved in the

2

1   selection of manufacturers to obtain price quotes from at least two

2   separate prospective manufacturers at least one of which was an HCT-

3   controlled or owned factory.

4       7.   Manufacturers generally issued invoices to HCT, which HCT

5   often paid via international wire transfers.  HCT maintained an

6   account at HSBC Bank USA, N.A. in New Jersey (the "HCT HSBC Account")

7   for this purpose.

8   B.   OBJECT OF THE CONSPIRACY

9       8.   Beginning no later than on or about September 20, 2010, and

10  continuing until at least in or about April 2017, in Los Angeles

11  County, within the Central District of California, and elsewhere,

12  defendant GARDNER conspired with co-conspirator Chang and others to

13  commit the crime of wire fraud involving deprivation of honest

14  services, in violation of Title 18, United States Code, Sections 1343

15  and 1346.

16  C.   MANNER AND MEANS OF THE CONSPIRACY

17      9.   The object of the conspiracy was carried out, and was to be

18  carried out, in substance, as follows:

19          a.   Instead of selecting manufacturers based on criteria

20  that would advance HCT's interests, and contrary to HCT's stated

21  policies, defendant GARDNER and co-conspirator Chang would case HCT

22  to award manufacturing contracts to companies (the "kickback-paying

23  companies") that, in turn, would pay kickbacks to defendant GARDNER

24  and co-conspirator Chang in exchange for receiving those contracts.

25  The kickback-paying companies included actual manufacturers, such as

26  Fortune Plastic Packaging (Huizhou) Co., which was based in China

27  ("Fortune"), as well as companies that posed as manufacturers but

28  that, in fact, outsourced the contracts to other companies that were

true manufacturers, such as JC Packaging Co., Ltd., which represented on its invoices that it was based in Taiwan ("JC Packaging").

b.   To conceal their solicitation and receipt of the kickbacks, defendant GARDNER and co-conspirator Chang would instruct the kickback-paying companies to transfer the kickbacks through foreign wire communications to bank accounts defendant GARDNER and co-conspirator Chang would open in foreign countries, including an account at The Hongkong and Shanghai Banking Corporation Limited that defendant GARDNER opened in Hong Kong (the "GARDNER HSBC Account").

c.   To maintain the contracts that resulted in the kickbacks, thereby ensuring the continued payment of the kickbacks, defendant GARDNER and co-conspirator Chang would orchestrate the use of interstate and foreign wire communications to cause invoices to be sent from the kickback-paying companies to HCT and payments to be sent from HCT to the kickback-paying companies.

d.   Defendant GARDNER would create business entities, including "Cognisant Limited," a Hong Kong company, which he would use to issue invoices to the kickback-paying companies.  The invoices would purport to be for payments for valid business expenses incurred by the business entities defendant GARDNER had created.  In fact, the invoices were not for valid business expenses and were instead used to solicit kickbacks from the kickback-paying companies and to conceal the nature of the kickback payments defendant GARDNER received.

e.   To further the conspiracy and to ensure that they received all of the kickback payments generated by the conspiracy, defendant GARDNER and co-conspirator Chang would maintain a ledger titled "Special Items" (the "Special Items Ledger") that tracked the

4

kickbacks they were owed by the kickback-paying companies and those they had already received.  Defendant GARDNER and co-conspirator Chang would also electronically communicate with each other concerning the receipt of kickback payments.

    f.   To further the conspiracy, defendant GARDNER and co-conspirator Chang would conceal evidence of their conspiracy from HCT by, among other things, failing to disclose and affirmatively denying their financial interests in, among other things, entities and bank accounts used to carry out the scheme, to HCT and its agents and by deleting incriminating files from their HCT-issued digital devices.

COUNT TWO

[31 U.S.C. §§ 5314, 5322(a),

31 C.F.R. §§ 1010.350, 1010.306, 1010.840]

A.   INTRODUCTORY ALLEGATIONS

10.   At times relevant to this Information:

a.   Citizens and residents of the United States who had a financial interest in, or signature or other authority over, one or more financial accounts in a foreign country with an aggregate value of more than $10,000 at any time during a calendar year were required to file with the Department of the Treasury a Report of Foreign Bank and Financial Accounts ("FBAR"), for every such calendar year.

b.   Defendant NICHOLAS GARDNER was a resident of the United States.

c.   During calendar year 2015:

i.   Defendant GARDNER had an interest in and signature authority over one or more financial accounts at a bank located in Hong Kong, a foreign country (the "foreign account(s)"), namely, the GARDNER HSBC Account, and

ii.   The foreign account(s) had an aggregate value in excess of $10,000 at some time during the calendar year.

B.   FAILURE TO FILE REPORT OF FOREIGN BANK AND FINANCIAL ACCOUNTS

11.   On or about April 15, 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant GARDNER knowingly and willfully failed to file with the Department of the Treasury an FBAR disclosing that he had a financial interest in, and signature and other authority over, one or more bank and other financial accounts in a foreign country that had an aggregate value at any time during 2015 of more than $10,000.

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c)]

12.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant NICHOLAS GARDNER's conviction of the offense set forth in Count One of this Information.

13.   Defendant GARDNER, if so convicted, shall forfeit to the United States of America the following:

a.   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

b.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

14.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant GARDNER, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has

//

//

7

1  been substantially diminished in value; or (e) has been commingled

2  with other property that cannot be divided without difficulty.

3

4                                    TRACY L. WILKISON
                                     United States Attorney
5

6

7                                    SCOTT M. GARRINGER
                                     Assistant United States Attorney
8                                    Chief, Criminal Division

9                                    RANEE A. KATZENSTEIN
                                     Assistant United States Attorney
10                                   Chief, Major Frauds Section

11                                   ALEXANDER B. SCHWAB
                                     CAROLYN S. SMALL
12                                   Assistant United States Attorneys
                                     Major Frauds Section
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28